PHILLIP A. TALBERT
United States Attorney
MATTHEW THUESEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARY KLOPFENSTEIN,<br><br>Defendant. | CASE NO. 2:24-cr-163 TLN<br><br>PLEA AGREEMENT<br><br>DATE: July 18, 2024<br>TIME: 9:30 a.m.<br>COURT: Hon. Troy L. Nunley |

## I.    INTRODUCTION

### A.    Scope of Agreement.

The Information in this case charges the defendant with ten counts of wire fraud, in violation of 18 U.S.C. § 1343. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.    Court Not a Party.

The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the Information. The Court is under no obligation to accept any recommendations made by the

PLEA AGREEMENT                    1

government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Plea Agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.     DEFENDANT'S OBLIGATIONS

### A.     Guilty Plea.

The defendant will plead guilty to Count Five of the Information—wire fraud, in violation of 18 U.S.C. § 1343. The defendant agrees that he is in fact guilty of that charge and that the facts set forth in the Factual Basis for Plea attached as Exhibit A ("Factual Basis") are accurate.

The defendant agrees this Plea Agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees the statements he makes in signing this Plea Agreement, including the factual admissions set forth in the Factual Basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Plea Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent these rules are inconsistent with this paragraph or with this Plea Agreement generally.

#### 1.     Waiver of Indictment.

The defendant acknowledges that, under the United States Constitution, he is entitled to be indicted by a grand jury on the charge to which he is pleading guilty and that, pursuant to Rule 7(b) of the Federal Rules of Criminal Procedure, he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charges set forth in the Information. The defendant agrees that at a time set by the Court, he will sign a written waiver of prosecution by indictment and consent to proceed by information rather than by indictment.

**B.     Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the Factual Basis, victims covered in those counts to be dismissed as part of this Plea Agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged for the period of June 2019 through March 2020. The amount of restitution will be $2.45 million.

The defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. The defendant agrees that any payment schedule or plan set by the Court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

The defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

The defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets without prior written consent of the United States Attorney, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court.

**C.     Fine.**

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine and that no fine should be imposed. The defendant understands it is his affirmative burden to prove he is unable to pay a fine and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of

a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

### D. Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands this Plea Agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

### E. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant, cooperating or not, violates this Plea Agreement in any way, withdraws his plea, or tries to withdraw his plea, this Plea Agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates this Plea Agreement by committing any crime or providing or procuring any statement or testimony that is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements, as set forth in this Plea Agreement, personally or through counsel, also constitutes a violation of this Plea Agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this Plea Agreement; and (3) to file any new charges that would otherwise be barred by this Plea Agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this Plea Agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of any such prosecutions. The defendant

agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this Plea Agreement. The determination of whether the defendant has violated this Plea Agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this Plea Agreement, or any leads derived therefrom, should be suppressed. By signing this Plea Agreement, the defendant waives any and all rights in the foregoing respects.

F.   **Forfeiture.**

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title, and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(c), 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure. Those assets include, but are not limited to, a forfeiture money judgment in the amount of $2.45 million.

The defendant agrees that the listed asset is property that constitutes or is derived from, directly or indirectly, proceeds traceable to his violation of 18 U.S.C. § 1343, as charged in the Information. The defendant agrees that the personal forfeiture money judgment is imposed based on his conviction for the offense to which he is pleading guilty, as discussed in this Plea Agreement. Any funds applied towards such judgment shall be forfeited to the government and disposed of as provided by law.

The defendant agrees to fully assist the government in the forfeiture of the listed asset and to take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell, transfer, convey, or otherwise dispose of any of his assets, including but not limited to, the above-listed asset.

The defendant also voluntarily stipulates and agrees that as part of his sentence the Court may, pursuant to Rule 32.2(b) of the Federal Rules of Criminal Procedure, order a forfeiture money judgment

in an amount up to $2.45 million, less any forfeited funds.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, that may be initiated. The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California, or its subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

The parties agree that any funds paid to victims through remission or restoration shall be credited to the defendant's restitution obligation. Any uncredited amounts shall be forfeited pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as described herein.

G. **Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that, if he fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in paragraph II.E above.

The defendant expressly authorizes the United States to obtain a credit report immediately to evaluate defendant's ability to satisfy any monetary penalty imposed by the Court. The defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held

by the U.S. Probation Office.

**H.    Agreement to Cooperate.**

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this Plea Agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

### III.    THE GOVERNMENT'S OBLIGATIONS

**A.    Dismissals/Other Charges.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Information. The government also agrees not to reinstate any dismissed counts, except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), III.B.3 (Reduction of Sentence for Cooperation), VI.B (Guideline Calculations), and VII.B (Waiver of Appeal and Collateral Attack) herein.

**B.    Recommendations.**

**1.    Incarceration Range.**

The government will recommend the defendant be sentenced to the low end of the applicable guideline range as determined by the Court.

**2.    Acceptance of Responsibility.**

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of the defendant's offense level

if the defendant clearly demonstrates acceptance of responsibility for his conduct, as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the Probation Officer in the preparation of the pre-sentence report, being truthful and candid with the Probation Officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### 3. Reduction of Sentence for Cooperation.

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if he provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands he must comply with paragraph II.H and not violate this Plea Agreement as set forth in paragraph II.E. The defendant understands it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.

The defendant understands the government may recommend a reduction in his sentence of less than 50% or no reduction at all, depending on the level of assistance the government determines the defendant has provided.

The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this Plea Agreement confers no right on the defendant to require that the government move for a reduction under U.S.S.G. § 5K1.1, and that this Plea Agreement confers no remedy on the defendant in the event the government declines to move for a reduction under U.S.S.G. § 5K1.1. In particular, the defendant agrees not to try to file a motion to withdraw his guilty plea based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following sentencing, the government may move for a further reduction of his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

### C. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate

statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty—wire fraud, in violation of 18 U.S.C. § 1343:

First, the defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

The defendant fully understands the nature and elements of the crime charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

**A.    Maximum Penalty.**

The maximum sentence the Court can impose for a violation of 18 U.S.C. § 1343 is 20 years of incarceration, a fine of $250,000, or twice the pecuniary gain or loss under 18 U.S.C. § 3571(d), a three-year period of supervised release, and a special assessment of $100.

By signing this Plea Agreement, the defendant also agrees the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which he is pleading guilty. The defendant further agrees he will not attempt to discharge in any present or future bankruptcy

proceeding any restitution imposed by the Court.

B. **Violations of Supervised Release.**

The defendant understands that, if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

### VI. SENTENCING DETERMINATION

A. **Statutory Authority.**

The defendant understands the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

B. **Guideline Calculations.**

The government and the defendant agree there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

    Base offense level: 7, pursuant to U.S.S.G. § 2B1.1.

    Specific offense characteristic: 16 levels are added because loss the defendant caused—$2.45 million—is more than $1.5 million but less than $3.5 million, pursuant to U.S.S.G. § 2B1.1(b)(1)(I).

    Acceptance of responsibility: 3 levels are subtracted if the defendant pleads guilty, accepts responsibility for his offense, and the specific offense level is 16 or greater, as provided in paragraph III.B.2 above.

The parties estimate, but do not stipulate to the following:

    Adjustment: 2 levels will be subtracted, if the defendant meets the criteria set forth in U.S.S.G. § 4C1.1(a).

    Adjusted offense level: 18.

PLEA AGREEMENT     10

Criminal history: category I.

Sentencing range: 27 to 33 months, if the defendant receives a 3-level reduction for acceptance of responsibility and a 2-level reduction under U.S.S.G. § 4C1.1(a). (The defendant understands that, if the criminal history category and/or the adjusted offense level differs from the parties' estimate, his sentencing range may differ from that set forth here.)

The parties agree they will not seek or argue in support of any other specific offense characteristics, Chapter Three or Four adjustments (other than the decreases for "Acceptance of Responsibility" and for "Certain Zero-Point Offenders"), departures, or cross-references, except that the government may move for a departure or an adjustment based on the defendant's cooperation (U.S.S.G. § 5K1.1) or post-plea obstruction of justice (U.S.S.G. § 3C1.1).

The defendant is free to make any arguments with respect to a variance from the guidelines under 18 U.S.C. § 3553(a). The government reserves its right to oppose any such variance.

## VII.     WAIVERS

### A.     Waiver of Constitutional Rights.

The defendant understands that, by pleading guilty, he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statute of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.     Waiver of Appeal and Collateral Attack.

The defendant understands the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum penalties for the offense to which he is pleading guilty. The defendant understands this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statute to which the defendant

is pleading guilty is unconstitutional, and any and all claims that the Factual Basis is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands these circumstances occur infrequently and in almost all cases this Plea Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. §§ 2255 or 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on the charge to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

### D. Waiver of Venue.

The defendant understands that the law gives the defendant a right to be prosecuted in the district where the offense was committed. The defendant understands that, by pleading guilty, he is waiving that right and any and all objections to venue for the crimes charged in the Information.

### E. Impact of Plea on Defendant's Immigration Status.

The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes

are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms he wants to plead guilty regardless of any immigration consequences his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this Plea Agreement and have discussed it fully with my client. This Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

Dated: 6/20/2024

DAVID W. DRATMAN
Attorney for Defendant

### B. Defendant:

I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 6/20/2024

GARY KLOPFENSTEIN
Defendant

PLEA AGREEMENT    13

**C.    Attorney for United States:**

I accept and agree to this Plea Agreement on behalf of the government.

Dated: July 10, 2024

PHILLIP A. TALBERT
United States Attorney

/s/ Matthew Thuesen
MATTHEW THUESEN
Assistant United States Attorney

EXHIBIT "A"

Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

During the relevant time period, Gary Klopfenstein lived in Illinois and owned GK Investment Management, LLC ("GKIM"). Klopfenstein also served as the Chief Wealth Officer of Zolla Financial, LLC, which was an investment company. Representatives of Zolla Financial raised investor funds through transactions typically styled as loans offering a fixed return, with the company's returns purportedly generated through algorithmic trading. Zolla High Yield Fund, LLC, was the documented borrower for many of the loans Zolla Financial managed. According to documentation provided to investors, Zolla Financial was the principal owner and sole manager of Zolla High Yield Fund. Although they were separate legal entities, the companies relied on common leadership and, in material respects, operated as a single entity, referred to collectively herein as Zolla.

Kenneth Winton was Zolla's CEO, President, and Manager. He became Zolla's purported owner in approximately January 2020. Person 1 was Zolla's CFO until approximately February 2020. Winton and Person 1 operated Zolla in the Eastern District of California.

From approximately June 2019 through approximately March 2020, Klopfenstein carried out a fraudulent scheme through which he stole $2.45 million in investor funds from Zolla. As part of his scheme, Klopfenstein falsely represented to Winton and Person 1 that he was using Zolla investor funds to invest in short-term notes related to the purchase and sale of jet fuel. No such notes existed.

In June 2019, Klopfenstein persuaded Winton and Person 1 to invest Zolla funds in the purported notes, which they referred to variously as jet fuel notes, jet fuel contracts, and a gas lease investment. Klopfenstein represented to Winton and Person 1 that the investments would be structured as a short-term promissory notes and accrue interest at 18% per year. Klopfenstein also represented that Zolla's investment would be in the name of GKIM, as his company already was an investor. To convince them to give him Zolla investor money, among other things, Klopfenstein provided Winton and Person 1 fabricated documents with forged signatures. Specifically, on or about August 27, 2019, Klopfenstein sent Winton and Person 1 an email attached to which was what Klopfenstein wrote was "documentation

you requested on the jet fuel note." The attached documents included a purported memorandum of understanding between a law firm ("Law Firm 1") and GKIM and a corporate guaranty from Law Firm 1 for the benefit of GKIM. Both documents were fake and contained a forged signature of a Law firm 1 partner.

Despite the fact that no jet fuel notes existed, Klopfenstein represented to Winton and Person 1 that the investment was profitable on multiple occasions. For example, on or about November 22, 2019, Klopfenstein sent an email to Winton and Person 1 stating, "So the total value of the gas investment as of today is $2,775,643.85, and carries an interest rate of 18%." Similarly, on or about January 2, 2020, Klopfenstein sent Person 1 an email stating that the total value of the "Jet Fuel" investment was $2,975,976.25. And, on or about February 9, 2020, Klopfenstein sent Person 1 an email stating that the total value of the investment was $3,018,409.38.

In total, Winton and Person 1 transferred $2.45 million to GKIM for Klopfenstein to invest in the purported jet fuel notes. Klopfenstein used the funds to pay personal expenses and invest in a real estate development. Winton and Person 1 transferred, via interstate wires, the Zolla investor funds to GKIM as follows:

- $500,000 on June 19, 2019;
- $500,000 on June 20, 2019;
- $250,000 on June 21, 2019;
- $500,000 on August 28, 2019;
- $500,000 on August 29, 2019; and
- $200,000 on August 30, 2019.

The emails Klopfenstein sent to Winton and Person 1 constitute interstate wires, as do the fund transfers from the Zolla account to the GKIM account, all of which were essential to Klopfenstein's fraudulent scheme.

*I have read and carefully reviewed with my attorney this Factual Basis for Plea. I agree that it is true and correct. I also agree that, if this matter proceeded to trial, the United States could establish each of the facts contained within this Factual Basis for Plea beyond a reasonable doubt, and that those facts satisfy the elements of the offense to which I am pleading guilty. Additionally, I agree that this*

*Factual Basis for Plea is a summary made for the purpose of providing the Court with a factual basis for my guilty plea, and it does not include all of the facts known to me concerning criminal activity in which I and others engaged.*

Dated: 6/20/2024

GARY KLOPFENSTEIN
Defendant